***E-FILED - 3/24/10***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REUBEN JOSEPH REYES, | No. C 08-4561 RMW (PR) |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS AND MOTION FOR SUMMARY JUDGMENT; REFERRING CASE TO PRO SE PRISONER SETTLEMENT PROGRAM |
| vs. | |
| ROBERT A. HOREL, et al., | |
| Defendants. | |

Plaintiff, a California prisoner proceeding pro se, filed the instant civil rights action pursuant to 42 U.S.C. § 1983 against numerous officials of Pelican Bay State Prison ("PBSP") on September 30, 2008. Defendant Terry moves to dismiss plaintiff's complaint for failure to state a claim for relief. All defendants also move for summary judgment, arguing that there is no genuine issue of material fact and that they are entitled to the judgment as a matter of law. Plaintiff opposed both motions, and defendants filed a reply. Having carefully considered the papers submitted, the court hereby DENIES defendant Terry's motion to dismiss and DENIES defendants' motion for summary judgment, for the reasons set out below.

///

///

Order Denying Motion to Dismiss and Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Reyes561denymtdandmfsjwpd.wpd

# BACKGROUND[1]

Plaintiff is an inmate with the California Department of Corrections and Rehabilitation ("CDCR"). He is currently housed at PBSP in Crescent City, California. On March 10, 1995, plaintiff was validated as a member of the Northern Structure/Nuestro Familia prison gang. On September 27, 2003, Defendant P. Terry at PBSP intercepted a letter that was addressed to plaintiff, but did not notify plaintiff about the letter or its interception. (Complaint, p. 9.) The letter was intercepted because Defendant Institutional Gang Investigation ("IGI") Officer Chadwick was planning to use it as evidence of plaintiff's gang activity at plaintiff's inactive/active review process. (Id. at 10.) Defendant Terry wrote a confidential memorandum about the letter, dated October 22, 2003, and added it to plaintiff's Central file ("C-file"). (Id. at 10.) Plaintiff was unaware of the letter, its interception, and its planned use.

On September 6, 2006, plaintiff was referred to PBSP's IGI in order to review and update his gang status. (Complaint, p. 19.) On April 23, 2007, Defendant Chadwick began plaintiff's gang status review proceedings. (Id.) Two days later, plaintiff was notified that his status had been changed to inactive and informed that he would be released from Secured Housing Unit ("SHU") soon. (Id. at 19-20, Ex. B-1.)

However, on July 25, 2007, Defendant Chadwick served plaintiff with a CDCR 128-B form. (Complaint, p. 20.) The 128-B form notified plaintiff about the intercepted letter in September 2003 which had been placed in his C-file, along with an accompanying confidential memorandum. The form noted that the contents of the letter met criteria for "gang activity." (Id., Ex. C-1.) Specifically, the comments stated:

> Confidential Memorandum dated October 22, 2003 staff intercepted a letter that was being sent to REYES. The letter has been determined to contain coded information containing information of interest to the NS/NF members in PBSP-SHU. By REYES receiving letters with such content, clearly demonstrates REYES is continuing to function under the influence of the gang. This documentation meets the criteria for gang involvement as prescribed in California Code of Regulations (CCR) Title 15, Section 3378(c)(8)(C) Written Material.

---

[1] The facts stated herein are undisputed.

1 (Complaint, Ex. C-1.)

2     Plaintiff was prohibited from seeing the letter itself, and was given a CDCR Form 1030,
3 Confidential Information Disclosure Form, with the same comments regarding the letter. (Id. at
4 Ex. C-3.)  This form is provided to plaintiff so that he may form a defense at his review
5 proceeding. (Id.)  On September 4, 2007, prison officials used the letter as the basis of their
6 decision to reinstate plaintiff's active gang status.  Plaintiff has been in segregated housing since
7 his initial validation.

**DISCUSSION**

9     Plaintiff states two cognizable claims against defendants: 1) that Defendant Terry
10 violated his First and Fourteenth Amendment rights by withholding an incoming letter addressed
11 to plaintiff without notice to plaintiff; and 2) that Defendants Horel, Chadwick, Berkler,
12 Harrison, and Fischer violated his Fourteenth Amendment right to due process and his Eighth
13 Amendment right to be free from inhumane conditions of confinement by finding him to be an
14 active gang member, which led to his continued retention in the SHU.

15     Defendants argue that 1) plaintiff's claim with regard to Defendant Terry should be
16 dismissed for failure to state a claim; 2) that defendants are entitled summary judgment; and 3)
17 that defendants are entitled to qualified immunity.

18     The court addresses each of defendants' arguments in turn.

19 A.    <u>Motion to Dismiss</u>

20     1.    <u>Standard of Review</u>

21     Failure to state a claim is a grounds for dismissal before service under both sections
22 1915A and 1915(e)(2), as well as under Rule 12(b)(6).  Dismissal for failure to state a claim is a
23 ruling on a question of law.  See <u>Parks School of Business, Inc., v. Symington</u>, 51 F.3d 1480,
24 1483 (9th Cir. 1995).  "The issue is not whether plaintiff will ultimately prevail, but whether he
25 is entitled to offer evidence to support his claim."  <u>Usher v. City of Los Angeles</u>, 828 F.2d 556,
26 561 (9th Cir. 1987).

28 Order Denying Motion to Dismiss and Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Reyes561denymtdandmfsjwpd.wpd

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." "Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (citations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 553-56 (2007) (citations omitted). A motion to dismiss should be granted if the complaint does not proffer "enough facts to state a claim for relief that is plausible on its face." Id. at 570; see, e.g., Ashcroft v. Iqbal, 129 S. Ct. 1937, 1952 (2009) (finding under Twombly and Rule 8 of the Federal Rules of Civil Procedure, that complainant-detainee in a Bivens action failed to plead sufficient facts "plausibly showing" that top federal officials "purposely adopted a policy of classifying post-September-11 detainees as 'of high interest' because of their race, religion, or national origin" over more likely and non-discriminatory explanations).

A pro se pleading must be liberally construed, and "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Twombly, 550 U.S. at 570 (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

Review is limited to the contents of the complaint, see Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994), including documents physically attached to the complaint or documents the complaint necessarily relies on and whose authenticity is not contested. See Lee v. County of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001). In addition, the court may take judicial notice of facts that are not subject to reasonable dispute. See id. at 688 (discussing Fed. R. Evid. 201(b)). Allegations of fact in the complaint must be taken as true and construed in the light most favorable to the non-moving party. See Symington, 51 F.3d at 1484.

///

2.  Analysis

Plaintiff argues that Defendant Terry violated his First and Fourteenth Amendment rights by failing to notify plaintiff of the intercepted letter that was addressed to him. Defendant responds that plaintiff's claim should be dismissed for failure to state a claim because Defendant Terry's failure to provide plaintiff with did not violate plaintiff's constitutional rights. (Mot. at 4.) Defendant cites to two cases to support this contention: Stevenson v. Koskey, 877 F.2d 1435 (9th Cir. 1989) and Denton v. Bowman, 2008 WL 755798, (S.D. Cal. 2008). (Mot. at 4-5.)

However, neither of these cases requires the dismissal of plaintiff's case. Denton involved an inmate whose *outgoing* mail was intercepted and delayed, but ultimately was delivered to the recipients. 2008 WL 755798 at *1. The district court concluded that the inmate had not demonstrated that the interception and delay "constitute[d] a violation of a constitutionally protected liberty interest." Id. at *3. In contrast, in the instant case, plaintiff never received the *incoming* intercepted mail, nor was he even notified of its existence until it was used against him four years later in his gang status review.

Stevenson is distinguishable because it discusses causation and the level of intent required for liability under section 1983. Plaintiff has alleged that Defendant Terry intercepted a letter and went to the trouble of writing a memorandum to include in plaintiff's file, yet did not notify plaintiff about the existence of the letter or his right to appeal the interception.

Neither case stands for the proposition that prisoners have no liberty interest in receiving mail. In fact, prisoners do have a liberty interest in the receipt of mail, which triggers procedural due process guarantees. Krug v. Lutz, 329 F.3d 692, 696-967 (9th Cir. 2003). If prison officials withhold mail, a prisoner has a due process right to receive notice that the incoming mail is being withheld. See Frost v. Symington, 197 F.3d 348, 353-54 (9th Cir. 1999). A prison may adopt regulations or practices which impinge on a prisoner's First Amendment rights as long as the regulations are "reasonably related to legitimate penological interests." See Turner v. Safley, 482 U.S. 78, 89 (1987). The Turner standard applies to regulations and practices concerning all

correspondence between prisoners and to regulations concerning incoming mail received by prisoners from non-prisoners. See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989).

Here, the applicable regulation requires that

> when incoming or outgoing mail/packages/publications addressed to or being sent by an inmate are withheld or disallowed, the inmate shall be informed . . . of the reason, disposition, name of official disallowing the mail/package/publication, and the name of the official to whom an appeal can be directed.

Cal. Code Regs. Title 15, § 3136(a). Plaintiff does not challenge the constitutionality of the regulation, but his complaint is that he did not even receive what was required by the regulation before being denied receipt of his letter. (Complaint, p. 32-33.) Plaintiff contends that he received no information regarding the existence of the stopped letter, the reason why it was stopped, the official who stopped it, or the official to whom he could appeal the decision to stop the letter. (Id.) Defendant does not dispute plaintiff's factual allegations.

In evaluating defendant's motion to dismiss, this court must take the facts in plaintiff's complaint as true and construe them in the light most favorable to him. See Symington, 51 F.3d at 1484. Thus, plaintiff has stated a colorable claim that he was denied receipt of a letter to which he had a First Amendment right, without due process of law, in violation of his Fourteenth Amendment rights. The motion to dismiss the claim regarding Defendant Terry for failure to state a claim is DENIED.

B.   Motion for Summary Judgment

   1.   Standard of Review

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). It is not the task of the court to scour the record in search of a genuine issue of triable fact. Keenan v. Allen, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. Id. If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." Celotex Corp v. Catrett, 477 U.S. at 323.

At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact. See Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999).

2.  Analysis

Plaintiff makes two arguments that defendants contest at the summary judgment stage. First, he claims that his gang status review violated his Fourteenth Amendment rights. Second,

he argues that being retained in SHU as a result of his review violated his Eighth Amendment rights.

### a. Fourteenth Amendment claim

Plaintiff's first argument is that his 2007 gang status review violated his Fourteenth Amendment due process rights. (Complaint, p. 32-34.) Defendants respond that plaintiff's gang status review comported with the requirements of due process, because he received the process due to a prisoner who is to be segregated for administrative purpose and for whom a liberty interest of "real substance" is at stake. (Mot. at 7.) Defendants conclude that they are thus entitled to summary judgment with regard to his Fourteenth Amendment claim. (Id.)

California's policy of housing suspected gang members in the SHU is not a disciplinary measure, but an administrative strategy to preserve order in the prison and protect the safety of all inmates. Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003). However, California statutes and prison regulations create a liberty interest in freedom from administrative segregation. Toussaint v. McCarthy, 801 F.2d 1080, 1098, 1100 (9th Cir. 1986).[2]

When prison officials initially determine whether a prisoner is to be segregated for administrative reasons, due process requires that they comply with the following procedures: (1) they must hold an informal non-adversary hearing within a reasonable time after the prisoner is segregated, (2) the prisoner must be informed of the charges against him or the reasons segregation is being considered, and (3) the prisoner must be allowed to present his views. Id. Due process does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, a written decision describing the reasons for placing the prisoner in administrative segregation or disclosure of the identity of any person

---

[2] CCR § 3335(a) permits placement in administrative segregation where the presence of an inmate in the general population poses a threat to his own safety and/or to an ongoing investigation of serious misconduct or criminal activity. CCR § 3339(a) provides that release from segregation shall occur at the earliest possible time. Toussaint held that when read together, these regulations create a liberty interest in freedom from administrative segregation. 801 F.2d at 1098.

Order Denying Motion to Dismiss and Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Reyes561denymtdandmfsjwpd.wpd

8

providing information leading to the prisoner's placement in administrative segregation. <u>Id.</u> at 1100-01.

Defendants assert that plaintiff received all the process that was due. However, plaintiff argues that the notice did not give him a meaningful opportunity to be heard. (Complaint, p. 20-21.) Plaintiff adds that even after he repeatedly asked for more information about the letter and its contents, the information he was provided was so vague that he was unable to present a sufficient defense. (<u>Id.</u>)

While due process in the administrative segregation context does not require detailed written notice of the charges or even a written description of the reasons for placing the prisoner in administrative segregation, <u>see</u> <u>Toussaint</u>, 801 F.2d at 1100-01, the Supreme Court has held that the level of due process due prisoners before being placed in administrative segregation includes "some notice" of the charges. <u>Hewitt v. Helms</u>, 459 U.S. 460, 476 (1983). While not precedential, the Second Circuit's reasoning in <u>Taylor v. Rodriguez</u> regarding notice requirement in administrative segregation context is persuasive. 238 F.3d 188, 193 (2d Cir. 2001). It held that the constitutional requirements for notice in administrative segregation should be similar to the notice requirement in disciplinary segregation, and should contain specific allegations of conduct of involvement with a prison gang, not merely vague, unspecific charges of being involved. <u>Id.</u> ("[a] hearing is not meaningful if a prisoner is given inadequate information about the basis of the charges against him. A prisoner should not . . . have to guess what conduct forms the basis for the charges against him.").

The court finds that plaintiff presented sufficient evidence to establish a genuine issue of material fact whether plaintiff was given a proper notice and meaningful opportunity to be heard.

In addition, the Ninth Circuit requires that "some evidence" support a decision to place an inmate in segregation for administrative reasons. <u>Toussaint</u>, 801 F.2d at 1104. This standard applies to placement in a SHU for gang affiliation. <u>Bruce</u>, 351 F.3d at 1287-88. The standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced. <u>Id.</u> at 1105 (<u>citing</u> <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985)). Ascertaining

whether the standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Id. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached. Id.

The Ninth Circuit requires that the evidence relied upon by prison disciplinary boards contain "some indicia of reliability," Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987), but has not directly considered whether a corresponding need for evidentiary reliability exists when prison officials segregate an inmate for administrative reasons. Some district courts have extended the reliability requirement to the administrative context, however, holding that "the evidence relied upon to confine an inmate to the SHU for gang affiliation must have 'some indicia of reliability' to satisfy due process requirements." Madrid v. Gomez, 889 F. Supp. 1146, 1273-74 (N.D. Cal. 1995); see Jones v. Gomez, 1993 WL 341282, *3-4 (N.D. Cal. 1993) (due process requires indicia of reliability due to high risk of false information by informants, inherent prisoner conflicts and necessity for independent fact-finding by prison officials). Adequate indicia of reliability are (1) the oath of the investigating officer as to the truth of his report that contains confidential information; (2) corroborating testimony; (3) a statement by the chairman of the committee that he had first-hand knowledge of sources of information and considered them reliable based on the informant's past record; and (4) an in camera review of the documentation from which credibility was assessed. Zimmerlee v. Keeney, 831 F.2d 183, 186-87 (9th Cir. 1987).

Here, what plaintiff disputes is whether defendants properly relied on some evidence in reassigning him to security housing based on the withheld letter. He contends that he should not have been reassigned based on the letter, and that he received too little and vague information about the letter to adequately defend himself against allegations that it showed that he was an active gang member. (Complaint, p. 20-24.) Furthermore, plaintiff contends that he is not a gang member, and that based on what he does know about the letter, the letter does not show that he is a gang member. (Id. at 24.) For example, he explains that defendant Hawkes told him that

Order Denying Motion to Dismiss and Motion for Summary Judgment; Referring Case to Pro Se Prisoner Settlement Program
P:\PRO-SE\SJ.Rmw\CR.08\Reyes561denymtdandmfsjwpd.wpd
10

the withheld letter included codes, such as referring to the city of Salinas as "Salad Bowl." (Id.) Plaintiff argues that "Salad Bowl" is a well-known nickname for Salinas, because of the amount of lettuce that is grown there. (Id.)

The California regulations governing the categorization of prisoners as active or inactive states that sources of gang identification includes:

> (C) Written material. Any material or documents evidencing gang activity such as the membership or enemy lists, constitutions, organizational structures, codes, training material, etc., of specific gangs. Staff shall articulate why, based on either the explicit or coded content, the written material is reliable evidence of association or membership with the gang. Staff shall document and disclose this information to the inmate/parolee in a written form that would not jeopardize the safety of any person or the security of the institution.

Cal. Code Reg. tit. 15 § 3378(c)(8)(C).

The Ninth Circuit has held that there must be some indicia of reliability of confidential information that forms the basis for prison disciplinary actions. See Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987) (requiring that the record contain "(1) . . . some factual information from which the committee can reasonably conclude that the information was reliable, and (2) . . . a prison official's affirmative statement that safety considerations prevent the disclosure of the informant's name" if the disciplinary committee was relying on a confidential informant's statements for its actions). See also Cato v. Rushen, 824 F.2d 703, 704-05 (9th Cir. 1987) (only evidence implicating defendant placed in disciplinary segregation was uncorroborated hearsay statement of confidential informant who had no first hand knowledge of any relevant statements or actions of defendant and polygraph statement of inmate who made statement was inconclusive). Review of both the reliability determination and the safety determination should be deferential. Zimmerlee, 831 F.2d at 186.

Here, the withheld letter is a source defendants kept confidential that formed the basis of defendants' decision to retain plaintiff in SHU. The record shows that plaintiff's gang status was updated on April 25, 2007, to be "inactive." A few months later, at the end of July 2007, it was recommended that plaintiff be retained on active gang status. The only difference between the

two documents is the existence of the withheld letter and the confidential memorandum that was written about it.

Unfortunately, defendants have not submitted the letter or the confidential memorandum as evidence or for in camera review. Nevertheless, defendants assert that they are entitled to summary judgment on this claim because the letter "contained coded information that would have been of interest to Northern Structure and Nuestra Familia prison gang members housed at Pelican Bay. It demonstrated that Plaintiff was continuing to function under the influence of the gang." (Reply, p. 2.) Plaintiff states that information contained in the letter was unreliable and insufficient to determine that he was an active gang member.

The court finds that plaintiff has raised credible questions about the reliability of the letter in its use as evidence of gang activity or association. Thus, there are triable issues of material fact as to whether plaintiff's due process rights were violated. Accordingly, defendants' motion for summary judgment on this claim is denied.

      b.  Eighth Amendment claim

Plaintiff's second argument is that being assigned to the SHU as a result of his gang status review hearing constituted an Eighth Amendment violation, because he receives inadequate exposure to sunlight, and has suffered a small disc herniation in his lower back, which was caused and is exacerbated by his housing conditions. (Complaint, p. 34; Exhibit I-1.) Defendants respond that because their assignment of plaintiff to segregated housing was appropriate because there was "some evidence" of his active gang status, they are entitled to summary judgment on this claim as well. (Mot. at 9.) They do not dispute the existence of plaintiff's disc herniation, or his allegation that they knew of his condition.

"[T]he transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Hewitt v. Helms, 459 U.S. 460, 468 (1983); cf. Neal v. Shimoda, 131 F.3d 818, 833 (9th Cir. 1997) (contemporary standards of decency are not violated by classification programs which pursue "important and laudable" goals and are instituted under the state's authority to

operate correctional facilities).  An indeterminate sentence in administrative segregation, without more, does not constitute cruel and unusual punishment in violation of the Eighth Amendment. See Anderson v. County of Kern, 45 F.3d 1310, 1315-16 (9th Cir. 1995) (no contact with any other inmate in administrative segregation, either for exercise, day room access or otherwise not cruel and unusual punishment); Toussaint v. Yockey, 722 F.2d 1490, 1494 n.6 (9th Cir. 1984) (more than usual hardships associated with administrative segregation required to state 8th Amendment claim).

However, deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. See Estelle v. Gamble, 429 U.S. 97, 104 (1976).  A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need.  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

Here, plaintiff alleges that he has suffered a herniated disc because he lacks a proper desk in his cell at SHU, forcing him to write in such a way that he injured his spine. (Complaint, p. 34, Ex. I-1; Opp. at 2-3.)  He explains that his doctor has told him that he will need surgery on his spine or he will have "to learn to live with the pain." (Complaint, p. 34.)  Although additional writing exacerbates plaintiff's condition, he says that given his confinement, he has nothing else to do and no other way to contact family and friends, since he is allotted a very limited time to see visitors.  (Id.)  Plaintiff also alleges that defendants were aware of his condition and yet reassigned him to security housing, without a proper desk, which exacerbated his condition. (Id. at 34, 37.)

Defendants have refuted none of plaintiff's allegations regarding this claim and the court concludes that, plaintiff has sufficiently alleged the two elements of an Eighth Amendment claim: that he has a serious medical need, and that defendants showed deliberate indifference to that need.  Defendants do not dispute plaintiff's claim that he has a spinal injury that has been

exacerbated by the conditions in security housing, nor do they dispute plaintiff's claim that they were aware of his condition when they reassigned him to security housing. Thus, viewing the facts in the light most favorable to the plaintiff, plaintiff has stated an Eighth Amendment claim sufficient to survive summary judgment. Defendants' motion for summary judgment as to the Eighth Amendment claim is denied.

C.   Qualified Immunity

Defendants contend that even if they violated plaintiff's constitutional rights, they are entitled to qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), which protects government officials from liability for civil damages if a reasonable person would not have known that the conduct violated a clearly established right. The burden is on defendants to establish that their actions were reasonable. Doe v. Petaluma City School Dist., 54 F.3d 1447, 1450 (9th Cir. 1995).

As the court has explained above, plaintiff produced sufficient evidence to establish a genuine issue of material fact regarding whether his due process rights were violated. These due process concerns are well established. See Toussaint, 926 F.2d at 802-03, 1098-1101; Cato, 824 F.2d at 705; see also Tapia v. Alameida, 2006 WL 842470, *16-17 (E.D. Cal. 2006) (denying qualified immunity in gang validation case where plaintiff argued that he was not given notice and opportunity to be heard regarding initial validation and that post-validation hearings were not meaningful). Moreover, the right to appropriate and timely medical care is well established. See, e.g., Hunt v. Dental Dept., 865 F.2d 198, 200 (9th Cir. 1989). Further, defendants have set forth no evidence to satisfy their burden of demonstrating that their actions could have been reasonable. Viewing the evidence in a light most favorable to plaintiff, the court finds that defendants are not entitled to qualified immunity.

D.   Referral to Pro Se Prisoner Settlement Program

Prior to setting this matter for trial and appointing pro bono counsel to represent plaintiff for that purpose, the court finds good cause to refer this matter to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the claims set forth above.

The proceedings will consist of one or more conferences as determined by Judge Vadas. The conferences shall be conducted with defendants, or the representative for defendants, attending by videoconferencing if they so choose. If these settlement proceedings do not resolve this matter, the court will then set this matter for trial and consider a renewed motion from plaintiff for appointment of counsel.

## CONCLUSION

1. Defendants' motion to dismiss and for summary judgment (docket no. 27) is DENIED.

2. The instant case is REFERRED to Judge Vadas pursuant to the Pro Se Prisoner Settlement Program for settlement proceedings on the remaining claims in this action, as described above. The proceedings shall take place within **ninety (90) days** of the filing date of this order. Judge Vadas shall coordinate a time and date for a settlement conference with all interested parties or their representatives and, within **ten (10) days** after the conclusion of the settlement proceedings, file with the court a report regarding the prisoner settlement proceedings. If these settlement proceedings to do not resolve this matter, plaintiff can file a renewed motion for appointment of counsel and the court will then set this matter for trial.

3. The clerk of the court shall mail a copy of the court file, including a copy of this order, to Judge Vadas in Eureka, California.

4. The instant case is STAYED pending the settlement conference proceedings.

This order terminates docket number 27.

IT IS SO ORDERED.

DATED: 3/23/10

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge