E-FILED on     3/7/2012

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

REUBEN JOSEPH REYES,

Plaintiff,

v.

ROBERT A. HOREL, et al.,

Defendants.

No. C 08-4561 RMW

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT

**[Re Docket No. 112]**

Defendants Horel, Berkler, Chadwick, Harrison, and Fisher (collectively "defendants") renew their motion for summary judgment on the claims against them. Plaintiff opposes the motion. On February 17, 2012, the court held a hearing to consider defendants' motion. Having considered the papers submitted by the parties and the arguments of counsel, and for the reasons set forth below, the court grants in part and denies in part the motion.

## I. BACKGROUND

Plaintiff Reuben Joseph Reyes is an inmate with the California Department of Corrections and Rehabilitation ("CDCR"). He is currently housed at Pelican Bay State Prison ("PBSP") in Crescent City, California. On March 10, 1995, plaintiff was first validated as a member of the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT—No. C 08-4561 RMW
WW/LJP

Northern Structure/Nuestra Familia prison gang. Because of the determination that he was an active prison gang member, plaintiff was placed in PBSP's Secured Housing Unit ("SHU").

On September 27, 2003, defendant P. Terry at PBSP intercepted a letter that was addressed to plaintiff, but did not notify plaintiff about the letter or its interception. Compl. at 9. Terry wrote a confidential memorandum about the letter, dated October 22, 2003, and added it along with the letter to plaintiff's Central file ("C-file"). *Id.* at 10, Ex. C-1. Plaintiff was unaware of the letter, its interception, and its planned use.

On September 6, 2006, plaintiff was referred to PBSP's Institutional Gang Investigation ("IGI") unit in order to review and update his gang status. Compl. at 19. On April 23, 2007, defendant Chadwick began plaintiff's gang status review proceedings. *Id.* Two days later, plaintiff was notified that his status had been changed to inactive and informed that he would be released from the SHU soon. *Id.* at 19-20, Ex. B-1.

However, on July 25, 2007, defendant Chadwick served plaintiff with a CDCR 128-B form. Compl. at 20. The 128-B form notified plaintiff about the intercepted letter in September 2003 that had been placed in his C-file, along with an accompanying confidential memorandum. The form noted that the contents of the letter met criteria for "gang activity." Compl.*,* Ex. C-1. Specifically, the comments stated:

> Confidential Memorandum dated October 22, 2003 staff intercepted a letter that was being sent to REYES. The letter has been determined to contain coded information containing information of interest to the NS/NF members in PBSP-SHU. By REYES receiving letters with such content, clearly demonstrates REYES is continuing to function under the influence of the gang. This documentation meets the criteria for gang involvement as prescribed in California Code of Regulations (CCR) Title 15, Section 3378(c)(8)(c) Written Material.

Compl., Ex. C-1.

Plaintiff was prohibited from seeing the letter itself and was given a CDCR Form 1030, Confidential Information Disclosure Form, with the same comments regarding the letter. *Id.*, Ex. C-3. This form was provided to plaintiff so that he could form a defense at his review proceeding. *Id.* In response to the information he was given, plaintiff told Chadwick that he had never received the letter or notice of its existence, that "there must be some error," and that he only receives mail from family and friends who are unaffiliated with any gang. *Id.*, Ex. C-2. On September 4, 2007, prison

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT—No. C 08-4561 RMW
WW/LJP 2

officials used the letter as the sole basis of their decision to reinstate plaintiff's active gang status. Compl., Ex. C-4. Plaintiff has been in segregated housing since February 27, 2001, when he was first received at the PBSP SHU. Dkt. No. 121 ¶ 17.

On September 20, 2008, plaintiff filed a "Complaint Under the Civil Rights Act." Compl. at 1. The complaint seeks declaratory and injunctive relief and damages. Compl. at 39-42. This court issued an Order of Service on December 9, 2008, finding that Reyes' allegations, when liberally construed, made the following cognizable claims for relief: (1) that defendants Horel, Chadwick, Berkler, Harrison and Fischer violated his Fourteenth Amendment right to due process and his Eighth Amendment right to be free from inhumane conditions of confinement by finding him to be an active gang member, which led to his retention in the SHU; and (2) that defendant Terry violated his First and Fourteenth Amendment rights by withholding an incoming letter addressed to him without notice. Dkt. No. 5 at 2:8-15.

On May 18, 2009, defendants filed a motion to dismiss under Rule 12(b)(6) and a motion for summary judgment. Dkt. No. 27. The court denied both of defendants' motions. Dkt. No. 84. With respect to the motion to dismiss, the court found that plaintiff had stated a colorable claim that he had been denied receipt of a letter to which he had a First Amendment right, without due process of law, in violation of this Fourteenth Amendment right. *Id*. at 6. As to the motion for summary judgment, the court found that plaintiff had raised "credible questions about the reliability of the letter in its use as evidence of gang activity or association" and had stated an Eighth Amendment claim by asserting that a spinal injury had been exacerbated by the conditions in the security housing unit. *Id.* at 12:10-14:5. After finding that defendants were not entitled to qualified immunity, the court stayed the case and referred it to the Pro Se Prisoner Settlement Program. *Id.* at 14:6-15:5. After settlement efforts were unproductive, the court appointed counsel for plaintiff.

Defendants have elected to file a renewed summary judgment motion in order to allow this court to review the 2003 letter that was intercepted by prison officials. Dkt. No. 112 at 1. Defendants also submit new evidence from PBSP medical officials regarding the seriousness of plaintiff's medical needs. *Id.* at 6.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT—No. C 08-4561 RMW
WW/LJP   3

On September 1, 2009, plaintiff was again validated as a gang member based on evidence other than the 2003 letter. Dkt. No. 114 at 2; Ex. 2. Plaintiff has challenged that validation, and has a case pending in Del Norte County Superior Court. Dkt. No. 121 at 6; Ex. 5.

## II. ANALYSIS

### A.  General Standard for Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. But on an issue for which the opposing party will have the burden of proof at trial, as is the case here, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, show that the fact "is genuinely disputed." Fed. R. Civ. P. 56(c)(1). The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex Corp v. Catrett*, 477 U.S. at 323.

1    At the summary judgment stage, the court must view the evidence in the light most favorable
2 to the nonmoving party: if evidence produced by the moving party conflicts with evidence produced
3 by the nonmoving party, the court must assume the truth of the evidence set forth by the nonmoving
4 party with respect to that fact. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

**B.  Plaintiff's Due Process Claim**

Plaintiff raises two Due Process claims. First, plaintiff alleges that under the First and Fourteenth Amendments to the United States Constitution, defendant Terry violated his due process right by failing to provide him with notice that an incoming piece of mail had been withheld. Terry has not moved for summary judgment, so this claim is not presently at issue. Second, plaintiff alleges that defendants violated his Fourteenth Amendment right to due process by using the wrongfully withheld letter as the sole evidence in a 2007 gang status review, and failing to provide him with proper notice to enable him to form a defense. All defendants named in this claim have renewed their motion for summary judgment.

Standard analysis under the Due Process Clause of the Fourteenth Amendment consists of two steps: first, the court asks whether there exists a liberty or property interest of which a person has been deprived, and, if so, the court asks whether the procedures followed by the State were constitutionally sufficient. *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). After analyzing both steps, the court finds that plaintiff has established a protected liberty interest, and also provided sufficient evidence regarding the inadequacy of procedures in his gang status review process that precludes a summary judgment in defendants' favor.

**1. Liberty Interest**

A liberty interest may arise from the Constitution itself, or it may arise from an expectation or interest created by state laws or policies. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citing *Vitek v. Jones*, 445 U.S. 480, 493-494 (1980), and *Wolff v. McDonnell*, 418 U.S. 539, 556-558 (1974)). Due process liberty interests created by prison regulations will be generally limited to freedom from restraint which, "while not exceeding the sentence in such unexpected manner as to give rise to protection by due process clause of its own force, nonetheless imposes atypical and

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT—No. C 08-4561 RMW
WW/LJP                              5

significant hardship on inmate in relation to ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).

In its March 24, 2010 order, the court found that California statutes and prison regulations create a liberty interest in freedom from administrative segregation under *Toussaint v. McCarthy*, 801 F.2d 1080, 1098, 1100 (9th Cir. 1986). Dkt. No. 84 at 8. Defendants now counter that plaintiff's 2007 gang status review process did not implicate a protected liberty interest because the review did not cause "atypical and significant hardship." *See Sandin*, 515 U.S. at 484. Specifically, defendants argue that "[plaintiff] was housed in the SHU before, during and after the 2007 review," and thus, unlike plaintiff's initial gang validation in 1995, the 2007 review did not change his conditions of confinement. Dkt. No. 112 at 11. The court disagrees that this makes a difference.

In order to determine whether disciplinary segregation imposes "atypical and significant hardship on inmate in relation to ordinary incidents of prison life," *Sandin* looks to "a comparison between inmates *inside* and *outside* disciplinary segregation," and asks whether the difference demonstrates that the plaintiff has suffered "major disruption in his environment." *Sandin*, 515 U.S. at 486-87 (emphasis added); *see also Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir 1996) ("The *Sandin* Court seems to suggest that a major difference between the conditions for the general prison population and the segregated population triggers a right to a hearing."). Thus, the proper comparison is between the conditions where the plaintiff is to be housed and where the general prison population is housed, rather than between the conditions where the plaintiff was housed before and after the review decision. Further, if the court accepts defendants' argument, it follows that regardless of whether a gang status review is conducted properly or not, any segregated prisoner who continues to be held in segregation as a result of the review decision loses his liberty interest for challenging the review process, because his condition of confinement does not change before, during and after the review. This result is inconsistent with the Supreme Court's teaching in *Sandin*. *See* 515 U.S. at 486.

Therefore, in order to determine whether plaintiff has a protected liberty interest, the court asks whether his assignment to the SHU imposes "atypical and significant hardship" in relation to the condition for the general prison population. *See id.* The Supreme Court has acknowledged the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT—No. C 08-4561 RMW
WW/LJP 6

1  difficulty many courts have in "identifying the baseline from which to measure what is atypical and
2  significant in any particular prison system." *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005).
3  Nonetheless, the Court found in *Wilkinson* that there was a liberty interest in avoiding confinement
4  in the Ohio State Penitentiary ("OSP"), where prisoners were subject to the following conditions:
5  virtually all human contact was prohibited; inmates had to remain in their cells for 23 hours a day;
6  an hour of exercise was permitted each day but only in a small indoor room; on top of that,
7  placement at OSP was indefinite and only reviewed annually; and placement disqualified an
8  otherwise eligible inmate for parole consideration. *Id.* at 223-24. The Court decided that "[w]hile
9  any of these conditions standing alone might not be sufficient to create a liberty interest, taken
10 together they impose an atypical and significant hardship . . . . under any plausible baseline." *Id.*

11      Here, the record shows that plaintiff has been confined in the SHU for nearly 11 years.
12 Under California prison regulations, an inmate housed in the SHU as a gang member can only be
13 considered for review of inactive status when he has not been identified as having been involved in
14 gang activity for a minimum of six years. 15 Cal. Code Regs. § 3378(e). In his declaration, plaintiff
15 describes the conditions of the SHU as follows: he resides in a windowless 8x10 foot cell by
16 himself, and has no cell mate; per SHU policy, he is confined to his cell 22.5 hours a day and only
17 allowed one hour of exercise at a time in a small yard with 15-foot high walls; he is not allowed any
18 personal phone calls except those with his attorney. Dkt. No. 121 ¶¶ 18-21. Plaintiff's description is
19 undisputed. Although neither party addressed the confinement conditions of the general prison
20 population at PBSP, the court finds that plaintiff's condition bears substantial similarity to the OSP
21 conditions in *Wilkinson* that the Court found "impose[d] an atypical and significant hardship under
22 any plausible baseline." *See Wilkinson*, 545 U.S. at 223-24. Moreover, defendants' challenge to the
23 court's previous conclusion that plaintiff has a protected liberty interest was based on his unchanged
24 situation, not on comparison between the SHU and general prison conditions. Thus, the court finds
25 that the SHU's conditions do impose an atypical and significant hardship on plaintiff, giving rise to a
26 protected liberty interest in freedom from administrative segregation. *See id.*; *Sandin*, 515 U.S. at
27 484.
28

1     Defendants further argue that even if the 2007 review had caused an atypical and significant
2 hardship, plaintiff's protected liberty interest is not implicated because the prison regulations
3 governing such reviews are discretionary, not mandatory. Dkt. No. 112 at 11. Defendants'
4 argument comes from an earlier Supreme Court case, *Hewitt v. Helms*, 459 U.S. 460 (1983), where
5 the Court found a protected liberty interest created by a state regulation based on the use of
6 "explicitly mandatory language" in the regulation. *Id.* at 472; *see also Wilkinson v. Austin*, 545 U.S.
7 at 222 ("*Hewitt* . . . , in particular, had employed a methodology for identifying state-created liberty
8 interests that emphasized 'the language of a particular [prison] regulation' instead of 'the nature of
9 the deprivation.'" (citing *Sandin*, 515 U.S. at 481)). However, this approach has been criticized by
10 recent Supreme Court decisions in *Sandin* and *Wilkinson*. *Sandin*, 515 U.S. at 482-83 ("*Hewitt* has
11 produced at least two undesirable effects. First, it creates disincentives for States to codify prison
12 management procedures in the interest of uniform treatment..."); *Wilkinson*, 545 U.S. at 222 ("The
13 search for a negative implication from mandatory language in prisoner regulations has strayed from
14 the real concerns undergirding the liberty protected by the Due Process Clause."). Instead, "[t]he
15 touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding
16 restrictive conditions of confinement is not the language of regulations regarding those conditions
17 but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'"
18 *Wilkinson*, 545 U.S. 209 at 223. Having concluded that the SHU imposes an atypical and significant
19 hardship on plaintiff, this court finds defendants' argument, which focuses on the language of the
20 prison regulation, unpersuasive.
21     **2. Procedural Due Process**
22     When a liberty interest is established, the court must examine the adequacy of the procedural
23 protections in plaintiff's gang status review process. When prison officials determine whether a
24 prisoner is to be segregated for administrative purposes and a liberty interest of "real substance" is
25 implicated, prison officials must 1) hold an informal, non-adversarial hearing within a reasonable
26 time after the prisoner is segregated; 2) provide the inmate with some notice of the charges against
27 him; and 3) allow the prisoner the opportunity to present his views to the official charged with
28 deciding whether to transfer him to administrative segregation. *Barnett v. Centoni*, 31 F.3d 813, 815

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT—No. C 08-4561 RMW
WW/LJP                              8

(9th Cir. 1994); *Toussaint v. McCarthy*, 801 F.2d 1080, 1100 (9th Cir. 1986). In addition, the Ninth Circuit requires that "some evidence" supports a decision to place an inmate in segregation for administrative reasons. *Toussaint*, 801 F.2d at 1104.

### a) Proper Notice and Opportunity to be Heard

Plaintiff claims that his 2007 gang status review violated his Fourteenth Amendment right to due process by validating him as an "active" gang member on the basis of the 2003 letter, without providing him a proper notice and meaningful opportunity to be heard. Dkt. No. 120 at 5. "Whether notice satisfies due process is a question of law . . . ." *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 918 (9th Cir. 1995).

While due process in the administrative segregation context does not require detailed written notice of the charges or even a written description of the reasons for placing the prisoner in administrative segregation, *see Toussaint*, 801 F.2d at 1100-01, the Supreme Court requires that, assuming the existence of a liberty interest, a prisoner placed in administrative segregation be provided "some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). Although the Ninth Circuit has not specified the minimum notice required in administrative segregation context, courts in this district have found the Second Circuit's reasoning in *Taylor v. Rodriguez*, 238 F.3d 188 (2d Cir. 2001), persuasive. *E.g.*, *Castro v. Terhune*, No. C 98-4877-WHA, 2010 U.S. Dist. LEXIS 3366 at *22-23 (N.D. Cal. Jan. 14, 2010). *Taylor* held that the constitutional requirements for notice in administrative segregation should be similar to the notice requirement in disciplinary segregation, and should contain "specific allegations of conduct indicating current involvement" with a prison gang, not merely "vague, unspecific charges" of being involved. *See* 238 F.3d at 193; *see also Bills v. Henderson*, 631 F.2d 1287, 1295 (6th Cir. 1980) (finding inmates should have been given notice of the specific facts or occurrences which triggered the decision to place them in administrative segregation).

Morever, the opportunity to be heard "in a meaningful manner" is a "fundamental requirement of due process." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Notice is essential because it gives the inmate "a chance to marshal the facts in his defense and to clarify what the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT—No. C 08-4561 RMW
WW/LJP                                                          9

1  charges are, in fact." *Wolff v. McDonnell*, 418 U.S. 439, 564 (1974). Although a prisoner being
2  segregated for administrative reasons is not entitled to the same degree of process as *Wolff* requires
3  for punitive or disciplinary segregation, *Toussaint*, 801 F.2d at 1099-1100, the basic function of
4  notice remains the same. Thus, *Taylor* concluded that "[a] hearing is not meaningful if a prisoner is
5  given inadequate information about the basis of the charges against him. A prisoner should not . . .
6  have to guess what conduct forms the basis for the charges against him." 238 F.3d at 193; *Castro*,
7  2010 U.S. Dist. LEXIS 3366 at *24-25; *accord Bills*, 631 F.2d at 1295 ("Such notice would promote
8  a meaningful hearing and would help to protect inmates from arbitrary government action.").

9  Here, plaintiff alleges that even after he repeatedly asked for more information about the
10 letter and its contents, the information he was provided was so vague that he was unable to present a
11 sufficient defense. Compl. at 20-21. Plaintiff's written response to Chadwick reflects that plaintiff
12 was guessing at the basis for the charge, suggesting he may have been confused with another inmate
13 or that someone with a grudge could have written him a vaguely worded letter that appeared to be in
14 code. *See id.*, Ex. C-2. Defendants assert that plaintiff received all the process that was due,
15 pointing out that he was interviewed by Defendant Chadwick in July 2007 in connection with the
16 gang status review, and was given the opportunity to dispute the gang activity allegations regarding
17 the letter. Dkt. No. 114 ¶ 2, Ex. 1 at 10:24-11:21. Further, plaintiff acknowledged that the
18 handwritten portion on the CDC 128-B form allowed him to provide an explanation of "what the
19 [2003] letter was about." *Id.* at 12:6-20.

20 Defendants do not dispute that the only information given to plaintiff before his 2007 gang
21 status review consisted of two forms containing the same description of the intercepted letter from
22 2003. These forms simply state that "[t]he letter has been determined to contain coded information
23 containing information of interest to the NS/NF members in PBSP-SHU" and that plaintiff's receipt
24 of such letters "clearly demonstrates REYES is continuing to function under the influence of the
25 gang." Compl., Exs. C-1, C-2. These statements were insufficient to provide plaintiff with adequate
26 notice of the charges against him. In essence, plaintiff had simply been told that his name appeared
27 as the recipient on a letter with information a gang member would want to know. No details were
28 provided about the letter or the nature of the information allegedly of interest to gang members.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT—No. C 08-4561 RMW
WW/LJP                               10

Notably, at the time of plaintiff's 2007 review, state regulations required that inmates receive notice of the name and address of the sender when mail was withheld:

> The inmate and [sic] will be promptly informed in writing of the reason the mail is being disallowed; the disposition to be made of the mail; the name of the official disallowing the mail; and, the name of the official to whom an appeal may be directed. The notice to the inmate shall include the name and date of the publication, or the name and address of the sender, and shall inform the inmate of the disposition that shall be made, if an appeal is not submitted to the named official within 15 days of the date of the notice.

15 Cal. Code Regs. § 3147(a)(5) (2007) (amended 2008). However, plaintiff was never provided even this basic information.[1] In addition, the notice to plaintiff simply asserted that he continued "to function under the influence of the gang" and failed to allege any specific conduct on plaintiff's part. Thus, even if plaintiff was given an opportunity to be heard in an interview with Chadwick and in his handwritten response, plaintiff was not given sufficient notice such that he had a *meaningful* opportunity to be heard. The bare information provided to plaintiff did not enable him to prepare a more specific defense than to speculate about errors and simply deny involvement. Accordingly, defendants are not entitled to summary judgment on plaintiff's Due Process claim.

### b) Some evidence

Plaintiff also argues that the 2003 letter, which served as the basis for defendants' decision to retain plaintiff in the SHU, did not meet the "some evidence" standard. The Ninth Circuit requires that "some evidence" supports a decision to place an inmate in segregation for administrative reasons. *Toussaint*, 801 F.2d at 1104. This standard applies to placement in a SHU for gang affiliation. *Bruce v. Ylst*, 351 F.3d 1283, 1287-88 (9th Cir. 2003). Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. *Toussaint*, 801 F.2d at 1105. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached in the challenged gang status review. *See id.*

---

[1] The insufficiency of procedures upon the initial withholding of the 2003 letter is not directly at issue on summary judgment. However, plaintiff stated on his response form that he never received notification of the disallowed mail, Compl., Ex. C-2, so defendants were aware that plaintiff had not previously been given the required information about the letter.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT—No. C 08-4561 RMW
WW/LJP 11

1 The Ninth Circuit requires that the evidence relied upon by prison disciplinary boards
2 contain "some indicia of reliability," *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1997), but has not
3 directly considered whether a corresponding need for evidentiary reliability exists in the context of
4 administrative segregation. Some district courts have extended the reliability requirement to this
5 context, holding that "the evidence relied upon to confine an inmate to the SHU for gang affiliation
6 must have 'some indicia of reliability' to satisfy due process requirements." *Madrid v. Gomez*, 889
7 F. Supp. 1146, 1273-74 (N.D. Cal. 1995).

8 In this case, plaintiff disputes that defendants properly relied on the 2003 letter as the basis
9 for their decision to retain him in the SHU. Plaintiff contends that he is not a gang member, and that
10 based on what he does know about the letter, the letter does not show that he is a gang member.
11 Compl. at 24. In its previous order, the court found that plaintiff raised credible questions about the
12 reliability of the letter in its use as evidence of gang activity association, based partly on defendant's
13 failure to submit the letter as evidence. Dkt. No. 84 at 12. On their renewed motion for summary
14 judgment, defendants submitted the letter for *in camera* review. Having reviewed the letter and
15 viewing this evidence in the light most favorable to plaintiff, the court finds that the letter meets the
16 "some evidence" standard and also contains "some indicia of reliability." *See Toussaint*, 801 F.2d at
17 1105; *Cato v. Rushen*, 824 F.2d at 705. In reaching its conclusion, the court is mindful that the
18 "some evidence" standard is minimally stringent, and that "the relevant question is whether there is
19 *any* evidence in the record that could support the conclusion . . . ." *Cato v. Rushen*, 824 F.2d 703 at
20 705; *see also Toussaint*, 801 F.2d at 1105 ("[T]he exigencies of prison administration allow prison
21 administrators to make segregation decisions on the basis of 'some evidence,' including the
22 administrator's experience and awareness of general prison conditions . . . a reviewing court may not
23 reverse the administration's decision if 'some evidence' supports the administration's decision.").

24 **3. *Swarthout* is inapplicable**

25 Defendants argue that in light of the Supreme Court's recent decision in *Swarthout v. Cooke*,
26 131 S. Ct. 859 (2011), this court should not review plaintiff's gang status determination in order to
27 assess the adequacy of the records constituting "some evidence." Dkt. No. 112 at 8-9. In *Swarthout*,
28 two inmates petitioned in federal court for writ of habeas corpus following denial of their state court

petitions for habeas relief from a decision that denied them parole. *Swarthout*, 131 S. Ct. at 860. In both instances, the Ninth Circuit reversed the State's decision to deny parole, holding that California's parole statute created a constitutionally-protected liberty interest, and that California's "some evidence" requirement was a "component" of that liberty interest. *Id.* at 860. It then concluded that the state court had made an "unreasonable determination of the facts in light of the evidence." *Id.* The Supreme Court reviewed both decisions and held that federal habeas corpus relief does not lie for errors of state law, *id.* at 861, and that California's "some evidence" rule is not a "component" of the liberty interest. *Id* at 862. The Court found that the minimum procedures adequate for due-process protection in the context of denying parole had been set forth in the high court's decision in *Greenholtz*, and it was improper for the Ninth Circuit to convert California's "some evidence" rule into a substantive federal requirement. *Id.*; *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 16 (1979).

Defendants argue that *Swarthout* "necessarily" implies that the Fourteenth Amendment does not authorize federal judicial review over the substance of state administrative housing decisions, therefore this court should not review the adequacy of the record in plaintiff's gang validation under the "some evidence" standard. Dkt. No. 112 at 8-9. The court disagrees. First of all, defendants misinterpret the Ninth Circuit's "some evidence" requirement for administrative segregation as a review of the substance of the state administrative housing decisions. *See* Dkt. No. 112 at 8. To the contrary, the Ninth Circuit clearly intended the "some evidence" test as a procedural protection in the administrative segregation process, rather than a review on the merits. *See Cato*, 824 F.2d at 705 ("The State, in depriving the plaintiff of that liberty interest, must do so on the basis of 'some evidence in the record.' Otherwise *procedural due process* under the circumstances of this case is not satisfied." (citing *Hill*, 472 U.S. at 455) (emphasis added)). To the extent that the Supreme Court held in *Swarthout* that the Ninth Circuit improperly converted California's "some evidence" rule into a substantive federal requirement when the adequate procedures for denying parole are already set forth in *Greenholtz*, 131 S. Ct. at 862, it does not necessarily render the Ninth Circuit's "some evidence" requirement for administrative segregation improper. Unlike in *Swarthout* where the Ninth Circuit's "some evidence" requirement for denying parole was at odds with established

Supreme Court precedent, here the "some evidence" requirement in the context of administrative segregation is not inconsistent with any high court precedents. *See, e.g.*, *Toussaint,* 801 F.2d at 1104 ("The Supreme Court's decision in *Hill* indicates that the due process clause requires only the existence of 'some evidence' in support of a prison administrator's segregation decision." (internal citation omitted)).

Second, contrary to defendants' assertion, this court, in reviewing plaintiff's gang status review, does not assess the "adequacy of the records constituting 'some evidence.'" *See* Dkt. No. 112 at 9. As noted above, ascertaining whether the "some evidence" standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. *Toussaint*, 801 F.2d at 1105. Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the challenged gang status review, *see id.*, and whether the evidence relied upon contain "*some* indicia of reliability," *Cato*, 824 F.2d at 705. Unlike in *Swarthout* where the Ninth Circuit reviewed the state courts' decisions regarding the plaintiffs' habeas petition on the merits, 131 S. Ct. at 862, here the court's analysis under the "some evidence" standard is an inquiry into the sufficiency of *procedures* involved in plaintiff's gang status review process. When a state-created liberty interest is implicated, a review of whether sufficient procedure has been followed is exactly what *Swarthout* instructs federal courts to do.  131 S. Ct. at 862.

**C.    Plaintiff's Claim For Equitable Relief Under The Doctrine of Mootness**

Defendants further argue that summary judgment should be granted as to plaintiff's Due Process Claim for equitable relief because it is moot.[2] Dkt. No. 12. Mootness is "the doctrine of standing set in a time frame: the requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). Defendants point to a 2009 gang status review in which plaintiff was again validated as a member of a prison gang. Dkt. No. 114 ¶ 3, Ex. 2. The evidence used in plaintiff's 2009 review does not include the 2003 letter at issue in this case. *Id.*

---

[2] Plaintiff also seeks compensatory damages under his Due Process claim, e.g. "[c]ompensatory damages of $150 a day for plaintiff's segregation in the SHU . . . August 15, 2006 to present from the defendants jointly and severally to plaintiff." Compl. at 30.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT—No. C 08-4561 RMW
WW/LJP                                    14

1   Defendants argue that plaintiff's continued placement in segregated housing is not the result of his
2   2007 status determination but rather his 2009 validation, and therefore plaintiff's Due Process claim
3   for equitable relief challenging the 2007 review is moot. Dkt. No. 112 at 12. In response, plaintiff
4   provides evidence that he has challenged the 2009 validation and has a case pending in Del Norte
5   County superior court. Dkt. No. 121 ¶ 36, Ex. 5. As such, plaintiff argues that the controversy is
6   still alive. Dkt. No. 120 at 17.

7   The court finds that plaintiff's Due Process claim for equitable relief on the basis of his 2007
8   review is not moot, despite him being revalidated as a gang member in 2009. Plaintiff is currently
9   challenging his 2009 validation in superior court. Should that court vacate the 2009 validation,
10  defendants may still fall back and rely on the 2007 status determination to continue holding plaintiff
11  in the SHU. Therefore, plaintiff still has an interest in equitable relief arising out of this litigation.

**D.  Plaintiff's Eighth Amendment Claim**

13  In addition to the due process claim, plaintiff claims that being assigned to the SHU as a
14  result of his gang status review decision constitutes an Eighth Amendment violation, because he
15  suffers from a small disc herniation in his back and inadequate exposure to sunlight, defendants
16  knew that reassigning him to the SHU would aggravate his injury, and they did it anyway. Compl.
17  at 34, Ex. I-1; Dkt. No. 120 at 21.

18  "Deliberate indifference to serious medical needs" violates the Eighth Amendment's
19  proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A
20  determination of "deliberate indifference to serious medical needs" involves an examination of two
21  elements: the seriousness of the prisoner's medical need and the nature of the defendant's response
22  to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*
23  *by WMX Tech., Inc. V. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). First, a "serious" medical
24  need exists if the failure to treat a prisoner's condition could result in further significant injury or the
25  "unnecessary and wanton infliction of pain." *Id.* at 1059 (citing *Estelle*, 429 U.S. at 104). Second,
26  the plaintiff must show that the defendant acted with deliberate indifference, which requires a
27  showing that the defendant was subjectively aware of the risk that the plaintiff faced. *Farmer v.*
28  *Brennan*, 511 U.S. 825, 829 (1994). Deliberate indifference may be shown where there is a

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT—No. C 08-4561 RMW
WW/LJP                                          15

1  purposeful act or failure to respond to a prisoner's pain or medical needs, and harm caused by that
2  indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A prison official may also be
3  held liable under the Eighth Amendment for denying humane conditions of confinement if he knows
4  that inmates face a substantial risk of serious harm and disregards that risk by failing to take
5  reasonable measures to abate it. *Id.* at 847.

**1. Deliberate Indifference**

Here plaintiff argues that the "deliberate indifference" prong of the test for Eighth Amendment violation is satisfied because defendants knew of plaintiff's condition (his back injury) when they assigned him to the SHU, and they knew that plaintiff's retention in the SHU would further aggravate his injury, but they did it anyway. Dkt. No. 120 at 20-21. Plaintiff correctly notes that in order to establish "deliberate indifference" in this case, he must show that at the time defendants assigned him to the SHU, defendants not only knew about his medical condition but also knew that his retention in the SHU would aggravate that condition. *See Farmer*, 511 U.S. at 829.

Plaintiff provides evidence from his medical history, which shows that he suffers low back pain and a herniated disc. Dkt. No. 121, Ex. 1-2. Plaintiff does not provide any direct evidence of defendants' knowledge about his medical condition, but rather alleges that defendants had access to plaintiff's medical file, which was housed in his C-file. Dkt. No. 120 at 20. Because "deliberate indifference" requires a showing that defendants *subjectively* knew about plaintiff's medical condition, the fact that defendants had access to plaintiff's medical file is not dispositive on this issue. However, viewing the evidence in the light most favorable to plaintiff, the court finds that plaintiff has demonstrated a genuine issue of material fact as to whether defendants subjectively knew about plaintiff's underlying medical condition.

On the other hand, plaintiff has failed to provide any evidence supporting his allegation that defendants knew plaintiff's retention in the SHU caused or aggravated his back injury. Dkt. No. 120 at 20. Plaintiff only provides testimony that "[he] believes that access to a desk would allow [him] to read and write without suffering any significant back pain." Dkt. No. 121 ¶ 15. Nothing in the record demonstrates that plaintiff ever communicated that belief to any prison personnel, nor is there any evidence of plaintiff making a complaint that his SHU confinement aggravated his back injury,

1   nor is there any diagnosis from plaintiff's doctor that supports at least some link between the SHU
2   confinement and plaintiff's back injury. Without evidence like this in plaintiff's file, even assuming
3   that defendants knew about plaintiff's medical condition, they had no basis to know that plaintiff's
4   condition was caused or aggravated by the SHU confinement. Accordingly, defendants' act of
5   assigning plaintiff to the SHU does not constitute "deliberate indifference," because there is no
6   evidence defendants had knowledge that the assignment would cause plaintiff to experience
7   aggravated back pain. Thus, defendants are entitled to summary judgment on plaintiff's Eighth
8   Amendment claim.

**2. Serious Medical Need**

In their renewed motion for summary judgment, defendants submitted the testimony from a PBSP medical official, Dr. Sayre to establish that plaintiff's back condition did not amount to a "serious medical need" for purposes of an Eighth Amendment violation. Dkt. No. 112 at 14. The parties dispute whether Dr. Sayre's declaration should be excluded from consideration. Dkt. No. 120 at 21; Dkt. No. 124 at 5. As the court has already found that there is insufficient evidence to support plaintiff's "deliberate indifference" allegation, the court need not decide whether plaintiff's condition constitutes "a serious medical need," or whether Dr. Sayre's declaration should be excluded.

**E.      Qualified Immunity**

Defendants argue that, even if the court were to find their actions unconstitutional, it would not have been clear to a reasonable officer in their circumstances that the conduct was unlawful. Because the court finds defendants are entitled to summary judgment on plaintiff's Eighth Amendment claim, the only question is whether defendants are entitled to qualified immunity with respect to plaintiff's Due Process claim arising out of the 2007 gang status review.

As discussed above, plaintiff was entitled to some notice and an opportunity to be heard. *See Toussaint*, 801 F.2d at 1100-01; *Hewitt*, 459 U.S. at 476. Defendants do not dispute these requirements; in fact, they argue that "a reasonable official could believe that the Due Process Clause would not be violated here *as long as* Reyes received procedural due-process protections of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT—No. C 08-4561 RMW
WW/LJP                      17

notice and an opportunity to be heard." Dkt. No. 112 at 17 (emphasis added). The issue is the sufficiency of the notice plaintiff received.

It was well-established at the time of plaintiff's 2007 review that the hearing mandated by due process must be conducted "in a meaningful manner," *Mathews*, 424 U.S. at 333, and that the purpose of notice is to allow an individual to prepare a defense, *Wolff*, 418 U.S at 564. Moreover, other circuit courts considering similar situations had held that inmates must be given notice of specific incidents or conduct, rather than simply a vague conclusion that their presence in the general population constituted a threat or that they were suspected of gang membership. *Taylor*, 238 F.3d at 193; *Bills*, 631 F.2d at 1295. Here, although defendants allowed plaintiff to be heard, a reasonable officer could not have believed plaintiff was provided with sufficient information to marshal facts in his defense and participate meaningfully in a hearing. As discussed above, the notice plainly provided no detail from which plaintiff could understand the nature of the charge. Thus, in light of the well-established basic principles of notice and their applications to the administrative segregation context by other circuit courts, this court finds that defendants are not entitled to qualified immunity on plaintiff's Due Process claim. *See Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1466 (9th Cir. 1984) (surveying decisions of other courts and finding right was sufficiently well-established although there were no explicit rulings from the Supreme Court or the Ninth Circuit).

### III. ORDER

For the foregoing reasons, the court grants in part and denies in part defendants' motion for summary judgment as follows:

1. Summary judgment is granted on plaintiff's Eight Amendment claim;

2. The remainder of defendants' motion is denied.

DATED: March 7, 2012

RONALD M. WHYTE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' RENEWED MOTION FOR SUMMARY JUDGMENT—No. C 08-4561 RMW
WW/LJP                                 18